# No. 12-2570

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### MOUNTAINEER COAL DEVELOPMENT COMPANY; WEST VIRGINIA CWP FUND

Petitioners

v.

### LARRY A. DINGESS; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR

Respondents

On Petition for Review of an Order of the Benefits Review Board,
United States Department of Labor

### BRIEF FOR THE FEDERAL RESPONDENT

**M. PATRICIA SMITH**
Solicitor of Labor
**RAE ELLEN JAMES**
Associate Solicitor
**GARY K. STEARMAN**
Counsel for Appellate Litigation
**HELEN H. COX**
Attorney
U.S. Department of Labor
Office of the Solicitor
Suite N-2117
200 Constitution Avenue, N.W.
Washington, D.C.  20210
(202) 693-5660

Attorneys for the Director, Office of
Workers' Compensation Programs

# TABLE OF CONTENTS

**<u>Page</u>**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ..................................................... 1

STATEMENT OF THE ISSUE ............................................................ 2

STATEMENT OF THE CASE

      A.  Legal framework ............................................................... 3

           1. The definition of pneumoconiosis .................................. 4
           2. The 15-year presumption ............................................... 5

      B.  Course of the proceedings below ................................... 7

STATEMENT OF THE FACTS

      A. Dingess's work and smoking histories .......................... 7

      B. The relevant medical evidence ...................................... 8

           1. *Dr. Zaldivar* ............................................................... 9
           2. *Dr. Crisalli* ............................................................... 11

      C.  Summary of the decisions below ................................... 11

           1. *ALJ Award, September 13, 2011* ............................... 11
           2. *Benefits Review Board Affirmance, November 6, 2012* ................. 13

      SUMMARY OF THE ARGUMENT .................................................... 14

# TABLE OF CONTENTS

**Page**

ARGUMENT:

To rebut the 15-year presumption, Mountaineer must either prove that Dingess does not have clinical and legal pneumoconiosis, or rule out pneumoconiosis as a contributor to his pulmonary disability ........................15

1. Standard of review....................................................................................15

2. The ALJ correctly imposed the burden of rebutting the 15-year presumption of total disability due to pneumoconiosis on Mountaineer.............................................................................................16

3. The ALJ permissibly found the opinions of Drs. Zaldivar and Crisalli insufficient to rebut the 15-year presumption because they were inconsistent with the regulatory definition of pneumoconiosis and relied on medical evidence not admitted into the record ..............................................................................................17

CONCLUSION...............................................................................................23

CERTIFICATE OF COMPLIANCE.................................................................24

CERTIFICATE OF SERVICE ..........................................................................25

# TABLE OF AUTHORITIES

**<u>Cases</u>:**                                                                    **<u>Page</u>**

*Barber v. Director, OWCP*,
   43 F.3d 899 (4th Cir. 1995) ...........................................................................17

*Betty B Coal Co. v. Director, OWCP*,
   194 F.3d 491 (4th Cir. 1999) ........................................................................16

*Consolidation Coal Co. v. Director, OWCP*,
   521 F.3d 723 (7th Cir. 2008) ........................................................................18

*Doss v. Director, OWCP*,
   53 F.3d 654 (4th Cir. 1995) ..........................................................................16

*Freeman United Coal Mining Co. v. Cooper*,
   965 F.2d 443 (7th Cir. 1992) ........................................................................21

*Gulf & Western Industries v. Ling*,
   176 F.3d 226 (4th Cir. 1999) ...........................................................................4

*Harman Mining Co. v. Director, OWCP*,
   678 F.3d 305 (4th Cir. 2012) .................................................................18, 20

*Hobbs v. Clinchfield Coal Co.*,
   917 F.2d 790 (4th Cir. 1990) ...........................................................................4

*Island Creek Coal Co. v. Compton*,
   211 F.3d 203 (4th Cir. 2000) .................................................................20, 21

*Jericol Mining, Inc. v. Napier*,
   301 F.3d 703 (6th Cir. 2002) ........................................................................21

*Keene v. Consolidation Coal Co.*,
   645 F.3d 844 (7th Cir. 2011) .....................................................................6, 7

# TABLE OF AUTHORITIES

**<u>Cases</u>:**                                                                                                    **<u>Page</u>**

*Keener v. Peerless Eagle Coal Co.*,
    23 Black Lung Rep. (Juris) 1-229,
    2007 WL 1644032 (2007) (en banc) ............................................................22

*Lane Hollow Coal Co. v. Director, OWCP*,
    137 F.3d 799 (4th Cir. 1998) ....................................................................15

*Midland Coal Co. v. Director, OWCP*,
    358 F.3d 486 (7th Cir. 2004) ....................................................................19

*Pauley v. BethEnergy Mines, Inc.*,
    501 U.S. 680 (1991)......................................................................................3

*Richardson v. Director, OWCP*,
    94 F.3d 164 (4th Cir. 1996) ........................................................................4

*Richardson v. Perales*,
    402 U.S. 389 (1971)....................................................................................16

*Rose v. Clinchfield Coal Co.*,
    614 F.2d 936 (4th Cir. 1980) ....................................................................17

*Underwood v. Elkay Mining, Inc.*,
    105 F.3d 946 (4th Cir. 1997) ....................................................................15

*Usery v. Turner Elkhorn Mining Co.*,
    428 U.S. 1 (1976)..........................................................................................4

*Westmoreland Coal Co. v. Cox*,
    602 F.3d 276 (4th Cir. 2010) ....................................................................16

# TABLE OF AUTHORITIES

<u>**Statutes:**</u>　　　　　　　　　　　　　　　　　　　　　　　　　　　　　<u>**Page**</u>

Black Lung Benefits Act,
　　30 U.S.C. §§ 901-944 (2006 & Supp IV 2010) (unless otherwise noted)

　　　　Section 401(b), 30 U.S.C. § 901(b) ....................................................3
　　　　Section 402(b), 30 U.S.C. § 902(b) ...............................................3, 4
　　　　Section 411(c)(4), 30 U.S.C. § 921(c)(4) ...................... 2, 3, 4, 5, 6, 7, 13, 15
　　　　Section 411(c)(4), 30 U.S.C. § 921(c)(4) (1972) ...........................................5
　　　　Section 422(a), 30 U.S.C. § 932(a)...................................................2

Black Lung Benefits Amendments of 1981,
　　Pub. L. No. 97-119, 95 Stat. 1635 (1981) ......................................................6

Longshore and Harbor Workers' Compensation Act,
　　33 U.S.C. § 901 *et seq.*

　　　　Section 21(a), 33 U.S.C. § 921(a)...................................................2
　　　　Section 21(c), 33 U.S.C. § 921(c)...................................................2

Patient Protection and Affordable Care Act,
　　Pub. L. No. 111-148, 124 Stat. 119 (2010)

　　　　Pub. L. No. 111-148, § 1556 ......................................................6

# TABLE OF AUTHORITIES

**Regulations:**                                                                    **Page**

20 C.F.R. § 718.201(a) .............................................................4
20 C.F.R. § 718.201(a)(1) .........................................................4
20 C.F.R. § 718.201(a)(2)....................................................4, 5, 18
20 C.F.R. § 718.201(b) ............................................................5
20 C.F.R. § 718.202(a)(1).........................................................8
20 C.F.R. § 718.204(b)(2)(i)......................................................8
20 C.F.R. § 718.204(b)(2)(ii) ....................................................8

20 C.F.R. § 718.305...........................................................2, 5, 6
20 C.F.R. § 718.305(a) ...........................................................5
20 C.F.R. § 718.305(d) ...........................................................6
20 C.F.R. § 718.305(e) ...........................................................6

20 C.F.R. § 725.414.............................................................13


**Miscellaneous:**

45 Fed. Reg. 13678 (Feb. 28, 1980) ..............................................5
45 Fed. Reg. 13692 (Feb. 28, 1980) ..............................................5
45 Fed. Reg. 13693 (Feb. 28, 1980) ..............................................5
65 Fed. Reg. 79938 (Dec. 20, 2000)..............................................19
65 Fed. Reg. 79944 (Dec. 20, 2000)..............................................19
77 Fed. Reg. 19456 (Mar. 30, 2012) .............................................7

National Institute for Occupational Safety and Health,
*Criteria for a Recommended Standard:  Occupational Exposure to
Respirable Coal Mine Dust § 4.2.2. Studies of COPD in Miners* (1995)
http://www.cdc.gov/niosh/docs/95-106/....................................20

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

## No.  12-2570

**MOUNTAINEER COAL DEVELOPMENT COMPANY;
WEST VIRGINIA CWP FUND**

**Petitioners**

**v.**

**LARRY DINGESS;
DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR**

**Respondents**

**On Petition for Review of an Order of the Benefits
Review Board, United States Department of Labor**

## BRIEF FOR THE FEDERAL RESPONDENT

### STATEMENT OF JURISDICTION

Mountaineer Coal Development Company's statement of jurisdiction,

although correct, is incomplete by omitting the jurisdictional basis for the Benefits

Review Board to decide the appeal of Administrative Law Judge Thomas Burke's

September 13, 2011, award of benefits to former coal miner Larry Dingess,

payable by Mountaineer.  Mountaineer appealed the ALJ's decision to the Benefits

Review Board on October 12, 2011.  The Board had jurisdiction because section

21(a) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.

§ 921(a), as incorporated into the Black Lung Benefits Act (BLBA) by 30 U.S.C.

§ 932(a), allows an aggrieved party thirty days to appeal an ALJ's decision to the

Board.  The injury contemplated by section 21(c)—Dingess's exposure to coal

mine dust—occurred in West Virginia, within the jurisdictional boundaries of this

Court.

## STATEMENT OF THE ISSUE

Section 921(c)(4), 30 U.S.C., provides a rebuttable presumption that coal

miners who worked underground for at least 15 years and suffer from a totally

disabling respiratory or pulmonary impairment are totally disabled by

pneumoconiosis, and therefore entitled to federal black lung benefits.  There is no

dispute that this presumption, which was restored by Congress in 2010, applies to

this case and was properly invoked.  Section 921(c)(4) specifies that the

presumption may be rebutted by establishing either that (A) the miner does not

have pneumoconiosis, or that (B) the miner's "impairment did not arise out of, or

in connection with, employment in a coal mine."  The ALJ, consistent with this

Court's case law and 20 C.F.R. § 718.305 (the regulation implementing Section

921(c)(4)), required Mountaineer to prove that Dingess does not have clinical and

legal pneumoconiosis under clause (A) or to "rule out" any connection between

Dingess's impairment and coal mine employment to establish rebuttal under clause (B). Finding that Mountaineer had failed to rebut the presumption by either method, the ALJ awarded benefits.

The question presented is whether substantial evidence supports the ALJ's determination that Mountaineer failed to show either that Dingess does not suffer from pneumoconiosis or that coal dust exposure was not a significant contributing cause of Dingess's totally disabling pulmonary condition and thus failed to rebut the presumption that Dingess is totally disabled due to pneumoconiosis?

## STATEMENT OF THE CASE

### A.  Legal framework.

Former coal miners who are totally disabled by pneumoconiosis, a respiratory or pulmonary disease arising out of coal mine employment, are entitled to BLBA benefits. "The black lung benefits program was enacted originally...to provide benefits for miners totally disabled due at least in part to pneumoconiosis arising out of coal mine employment, and to the dependents and survivors of such miners." *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 683-84 (1991). The statute, now known as the Black Lung Benefits Act (BLBA), *see* 30 U.S.C. § 901(b), has been substantially amended over the years. The history of two provisions—section 902(b)'s definition of pneumoconiosis and section 921(c)(4)'s 15-year presumption—are particularly relevant to this case. 30 U.S.C. §§ 902(b),

3

921(c)(4).

**1. The definition of pneumoconiosis.**

Since March 1, 1978, the Act has defined "pneumoconiosis" as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). The implementing regulation divides pneumoconiosis into two types, "clinical" and "legal." 20 C.F.R. § 718.201(a). "Clinical pneumoconiosis" refers to a particular collection of diseases "recognized by the medical community" as fibrotic reactions of lung tissue to the "permanent deposition of substantial amounts of particulate matter in the lungs." 20 C.F.R. § 718.201(a)(1); *see also Hobbs v. Clinchfield Coal Co.*, 917 F.2d 790, 791 n.1 (4th Cir. 1990) ("Clinical pneumoconiosis refers to the lung disease caused by fibrotic reaction of the lung tissue to inhaled dust, which is generally visible on chest x-ray films as opacities." (quoting *Usery v. Turner-Elkhorn Mining Co.,* 428 U.S. 1, 7 (1976)). It is generally diagnosed by x-ray, biopsy, or autopsy. 20 C.F.R. § 718.201(a)(1).

"Legal pneumoconiosis" is a broader category, including "any chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2); *see Gulf & Western Industries v. Ling*, 176 F.3d 226, 231 (4th Cir.1999) ("The regulations detail the breadth of what is frequently called "legal" pneumoconiosis…."); *Richardson v. Director, OWCP*, 94 F.3d 164, 166

4

n.2 (4th Cir. 1996) ("COPD [chronic obstructive pulmonary disease], if it arises out of coal-mine employment, clearly is encompassed within the legal definition of pneumoconiosis, even though it is a disease apart from clinical pneumoconiosis."). "[A]ny *chronic restrictive* or obstructive pulmonary disease" that is "significantly related to, or substantially aggravated by" exposure to coal mine dust is legal pneumoconiosis.  20 C.F.R. § 718.201(a)(2), (b) (emphasis added).

## 2.  The 15-year presumption.

From its inception, the BLBA has included various presumptions to assist miners in proving that they are totally disabled by pneumoconiosis.  Relevant to this case is 30 U.S.C. § 921(c)(4)'s 15-year presumption, which was enacted in 1972 and provides, in relevant part:

> If a miner was employed for fifteen years or more in one or more underground coal mines,…and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis….The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

30 U.S.C. § 921(c)(4) (1972).

In 1980, DOL promulgated 20 C.F.R. § 718.305 to implement the 15-year presumption.  *See* 45 Fed. Reg. 13678, 13692-93 (Feb. 28, 1980).  Section 718.305(a) is substantially identical to the statute except that the last sentence

specifying the two methods of rebuttal is not limited to "the Secretary."  Section

718.305(d) additionally provides:

> Where the cause of death or total disability did not arise in whole or in part out of dust exposure in the miner's coal mine employment or the evidence establishes that the miner does not or did not have pneumoconiosis, the presumption will be considered rebutted. However, in no case shall the presumption be considered rebutted on the basis of evidence demonstrating the existence of a totally disabling obstructive respiratory or pulmonary disease of unknown origin.

20 C.F.R. § 718.305(d).

In 1981, the 15-year presumption was eliminated for all claims filed after

that year.  Pub. L. 97-119 § 202(b)(1), 95 Stat. 1635 (1981).  Accordingly,

subsection (e) was added to 20 C.F.R. § 718.305 to explain that the 15-year

presumption would not be available in such claims.  The regulation has not been

amended since.[1]

In 2010, while Dingess's 2007 claim was pending before the ALJ, Congress

restored the 15-year presumption in Section 1556 of the Affordable Care Act.  Pub.

L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010).  This restoration applies to

claims that were filed after January 1, 2005, and pending on or after March 23,

2010, the ACA's enactment date.  *Id.*; *see also Keene v. Consol. Coal Co.*, 645

---

[1]  While the current version of 20 C.F.R. § 718.305 does not, by its own terms, apply to claims filed after 1981, it remains the Department's interpretation of section 921(c)(4).

F.3d 844, 847 (7th Cir. 2011) (affirming constitutionality of revised section

921(c)(4)).[2]

It is undisputed that Dingess suffers from a restrictive respiratory

impairment that totally disables him from performing his former work as a miner,

that he worked in the coal mines for 25 years, and that he therefore is entitled to

invocation of the 15-year presumption.  Pet. Br. at 23; Joint Appendix (JA) 55, 65-

66.  The only question here is whether Mountaineer rebutted it.

**B.  Course of the proceedings below.**

Dingess filed his claim for federal black lung benefits in October 2007.  JA

54.  After an initial administrative determination of entitlement, Mountaineer

requested a hearing.  In a September 13, 2011, decision, the ALJ awarded benefits.

JA 53-72.  The Benefits Review Board affirmed the award on November 6, 2012.

JA 76-83.  Mountaineer then petitioned this Court for review.  JA 87-89.

## STATEMENT OF THE FACTS

**A. Dingess's work and smoking histories.**

Dingess worked as an underground coal miner in West Virginia for

---

[2]  The Department has issued proposed regulations implementing section 921(c)(4)
as revived in 2010.  *See* Regulations Implementing the Byrd Amendments to the
Black Lung Benefits Act:  Determining Coal Miners' and Survivors' Entitlement
to Benefits, 77 Fed. Reg. 19456 (Mar. 30, 2012).

approximately twenty-five years between 1971 and 2003. JA 55, 78 nn.6, 7; Pet.

Br. at 3. In 2003, he suffered work-related back and neck injuries and ceased coal

mine work. JA 35, 54-55. Dingess smoked approximately one pack of cigarettes a

day from 1971 to 2003. JA 55.

**B. The relevant medical evidence.[3]**

Dingess's relevant prior medical history includes a diagnosis of Hodgkin's

disease in 1983 that was treated with radiation therapy with good results. JA 102,

147, 226. He returned to work until 2003 when he suffered back and neck injuries

from slate falling at the mine. JA 40-41, 102, 146. These injuries resulted in

permanent disability from coal mine work. *Id*. Dingess also has cardiac problems

and has a pacemaker and stent. JA 36-37, 42-43, 102, 147.

This appeal centers on the ALJ's consideration of Drs. Zaldivar and

Crisalli's medical opinions regarding the etiology of Dingess's disabling restrictive

---

[3]  The parties agree that Dingess has a totally disabling, restrictive, respiratory impairment and that he does not have clinical pneumoconiosis. Pet. Br. at 23; App. 69, 78 n.6. Only the cause of Dingess's restrictive pulmonary disease is at issue. Much of the medical evidence of record is not directly relevant to this issue, and is therefore not included in this summary of the evidence. For example, the results of various x-ray readings (which are primarily used to diagnose clinical pneumoconiosis, *see* 20 C.F.R. § 718.202(a)(1)) and pulmonary function tests and arterial blood gas studies (which are primarily used to determine the extent of a respiratory impairment, *see* 20 C.F.R. § 718.204(b)(2)(i)-(ii)), are not summarized here.

pulmonary impairment.[4]  Both doctors ruled out coal dust as a contributing cause

of any restrictive impairment or disease.

### 1. Dr. Zaldivar.

Dr. George Zaldivar examined Dingess in February 2009 and in July 2010,

and conducted a review of additional medical records provided to him.  JA 139.

Dr. Zaldivar recorded a 32-year history of coal mine work and a 30-year pack-per-

day cigarette smoking history.  JA 146.  He reported the chest x-ray was negative

for pneumoconiosis.  JA 155.  He said that the x-ray evidence of pleural thickening

resulted from left ventricular failure and the calcified hilar nodes were due to the

treated Hodgkin's lymphoma.  JA 143.  The pulmonary function testing showed

moderate restriction of vital capacity without any obstruction and mild restriction

---

[4]  The record also contains the medical opinions of Drs. Ranavaya and Gaziano.
Dr. Ranavaya interpreted Dingess's x-ray as positive for complicated
pneumoconiosis.  JA 226, 238.  His diagnosis, however, was contrary to the
preponderance of the evidence and cast doubt on the credibility of the rest of his
medical conclusions.  JA 63.  Dr. Gaziano concluded that Dingess had simple coal
workers' pneumoconiosis, along with atherosclerotic heart disease and "significant
pleural changes as the result of prior treatment and possible complications of
Hodgkin's disease."  JA 103.  The doctor opined that Dingess's pulmonary
impairment "is related primarily to the restriction caused by his Hodgkin's
treatment and/or right chest complications, however, his impairment is very
significantly contributed to by his thirty-two years in the underground mines and
the presence of occupational pneumoconiosis."  JA 103.  Neither the ALJ's award
nor the Board's affirmance turn on the weight accorded to either opinion—both
support the presumed facts of total disability due to pneumoconiosis—and so
neither will be discussed separately here.

of total lung capacity without air trapping.  JA 142-43.

Dr. Zaldivar concluded that there was "no evidence to justify a diagnosis of coal workers' pneumoconiosis neither from the medical nor legal standpoint"; that there was evidence of a pulmonary impairment "sufficient to disable Mr. Dingess from performing any work requiring physical activity"; and that the "pulmonary impairment is the result of treatment of the Hodgkin's lymphoma and congestive heart failure and not related to his occupation as a coal miner."  JA 144.

Dr. Zaldivar disagreed with "the examiner…who stated that coal mining work contributed to the pulmonary impairment when in fact there is only a restrictive impairment well explained by the history of radiation to the mediastinum and the pleural effusion caused by both Hodgkin's disease and now by left ventricular cardiac dysfunction with congestive heart failure."  JA 143. Relying on a report from the Center for Disease Control, Dr. Zaldivar noted that "the expected finding of pulmonary abnormalities in coal miners are those of increased total lung capacity and an increased residual volume," and that "diffusion abnormality is not a manifestation of coal workers' pneumoconiosis." JA 143.  Furthermore, Dr. Zaldivar stated that "[s]imple coal workers' pneumoconiosis does not cause a restrictive pulmonary impairment with restriction of total lung capacity and residual volume nor does it cause a diffusion impairment."  *Id*.

10

Dr. Zaldivar found that Dingess "only reveal[ed] a restriction of the total lung capacity and the vital capacity." *Id*. Therefore, he concluded that "Mr. Dingess does not have legal pneumoconiosis because the pulmonary abnormalities that he has are best explained by the medical conditions which he suffered such as Hodgkin's lymphoma requiring generalized radiation and congestive heart failure with pleural effusions requiring not only the need to drain the chest and to give diuretic but also to use a pacemaker." JA 143-44.

### 2. *Dr. Crisalli.*

Dr. Robert Crisalli conducted a review of medical records provided to him. JA 174. Based on his review, Dr. Crisalli concluded that Dingess did not have clinical or legal pneumoconiosis. JA 179. Dr. Crisalli reasoned that "Mr. Dingess has a pulmonary functional impairment of a restrictive type. Coal worker[s'] pneumoconiosis causes an obstructive defect. The absence of the obstructive defect in the presence of pulmonary function studies which show severe impairment essentially rules out coal dust related lung disease as a cause of Mr. Dingess' impairment." JA 179. Dr. Crisalli attributed the chronic changes in the pleura in Dingess's lung and his pulmonary impairment to "complications from Hodgkin's disease." *Id*.

## C. Summary of the decisions below.

### 1. *ALJ Award, September 13, 2011.*

The ALJ found that Dingess established twenty-five years of underground

11

coal mine employment and a totally disabling pulmonary impairment.  JA 55, 63-66.  Consequently, the ALJ found that Dingess invoked the 15-year presumption that he is totally disabled due to pneumoconiosis.  JA 66.

The ALJ then determined that Mountaineer failed to rebut the presumption because it failed to show either that Dingess did not have pneumoconiosis or that the disease did not contribute to his pulmonary disability.  The ALJ found that Mountaineer, although proving the absence of clinical pneumoconiosis, did not disprove legal pneumoconiosis.  JA 69-71.  He discredited Drs. Zaldivar and Crisalli's opinions as inconsistent with the regulatory definition of pneumoconiosis (which includes restrictive impairments) because they ruled out the possibility that restrictive impairments could have been caused by coal dust exposure.  JA 70.  The ALJ also determined that these doctors' opinions warranted less weight because the doctors relied on medical testing and treatment records that were not submitted into evidence, thereby preventing the ALJ from ascertaining exactly what documentation supported their opinions.  JA 70.  Therefore, the ALJ found the poorly reasoned and poorly documented opinions of Drs. Zaldivar and Crisalli insufficient to carry Mountaineer's burden of proving that Dingess does not suffer from pneumoconiosis or that coal dust is not a significant contributing cause of his

total pulmonary disability. JA 71.[5] The ALJ therefore concluded that Mountaineer failed to carry its burden of rebutting the presumption that Dingess is totally disabled due to pneumoconiosis. JA 71.

### 2. Benefits Review Board Affirmance, November 6, 2012.

The Board affirmed the award of benefits. The Board affirmed as unchallenged the ALJ's finding that the Section 921(c)(4) 15-year presumption was properly invoked. JA 78 n.6. Regarding rebuttal of that presumption, the Board held that the ALJ permissibly determined that the view expressed by Drs. Zaldivar and Crisalli—that the presence of a restrictive pulmonary impairment ruled out coal dust as a cause of that impairment—was contrary to the regulatory definition of pneumoconiosis and, therefore, the ALJ properly assigned less weight to these medical opinions. JA 80.

The Board also rejected Mountaineer's argument that the ALJ improperly accorded less weight to its experts' opinions because the doctors referenced medical records that were not part of the record, contending that these additional records would have been admissible under the evidence limitations set forth in 20 C.F.R. § 725.414. The Board explained that the ALJ's assessment of the reliability

---

[5] The ALJ also determined that Dr. Gaziano's opinion, which diagnosed legal pneumoconiosis, *see supra* n.4, did not assist Mountaineer's efforts to rebut the 15-year presumption. JA 71.

of these opinions did not turn on the potential admissibility of the underlying documentation, but rather on the ALJ's inability to "accurately evaluate the extent to which Drs. Zaldivar and Crisalli relied on evidence outside the record."  Thus, the Board ruled that the administrative law judge permissibly assigned less weight to their opinions.  JA 81.

Because the ALJ "properly discredited the two opinions supportive of employer's burden of showing that claimant does not have pneumoconiosis or that his respiratory impairment does not arise out of, or in connection with, employment in a coal mine," the Board found it unnecessary to address Mountaineer's allegations of error in the ALJ's evaluation of Dr. Gaziano's opinion, which in any event did not support rebuttal.  JA 82.  Thus, the Board affirmed the ALJ's finding that Mountaineer did not rebut the 15-year presumption and the resulting award of benefits to Dingess.  JA 82.

## SUMMARY OF THE ARGUMENT

The ALJ properly determined that Mountaineer failed to rebut the presumption of total disability due to pneumoconiosis.  The ALJ reasonably found Mountaineer's doctors' opinions insufficient to rebut the presumption because they were inconsistent with the regulatory definition of pneumoconiosis and relied on medical evidence not admitted into the record.  Credibility determinations are the ALJ's to make, and this ALJ's assessment of the expert opinions is supported by

14

substantial evidence and should be affirmed.

In addition to disagreeing with the ALJ's discrediting of its doctors' opinions, Mountaineer claims that the medical evidence does not affirmatively establish the presence of legal pneumoconiosis. But this finding was unnecessary here. The ALJ awarded benefits by operation of the section 921(c)(4) presumption of total disability due to pneumoconiosis: the ALJ correctly invoked the presumption and then properly imposed the burden on Mountaineer to rebut it either by *disproving* the presence of pneumoconiosis or by showing that the disease played no role in Dingess's disability. Mountaineer failed to do either and the award was therefore proper.

## ARGUMENT

**To rebut the 15-year presumption, Mountaineer must either prove that Dingess does not have clinical and legal pneumoconiosis, or rule out pneumoconiosis as a contributor to his pulmonary disability.**

## 1. Standard of review.

The arguments raised here are questions of fact. In federal black lung cases, the ALJ makes factual findings, evaluates the credibility of witnesses and weighs the conflicting evidence. *See Underwood v. Elkay Mining, Inc.*, 105 F.3d 946, 949 (4th Cir. 1997). The ALJ renders findings of fact and conclusions of law, and must provide an adequate explanation of what he did and why he did it. *Lane Hollow Coal Co. v. Director, OWCP*, 137 F.3d 799, 803 (4th Cir. 1998). This Court

reviews the record to determine whether the ALJ's factual findings are based upon substantial evidence. *Doss v. Director, OWCP*, 53 F.3d 654, 659 (4th Cir. 1995). Substantial evidence is more than a mere scintilla and is such evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To the extent any of Mountaineer's arguments may be cast as a question of law, the Court exercises *de novo* review over such questions, including interpretations of the BLBA and its implementing regulations. *See Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 282 (4th Cir. 2010). As the administrator of the BLBA, the Director's reasonable interpretations of its ambiguous provisions are entitled to deference. *See Betty B Coal Co. v. Director, OWCP*, 194 F.3d 491, 498 (4th Cir. 1999).

## 2. The ALJ correctly imposed the burden of rebutting the 15-year presumption of total disability due to pneumoconiosis on Mountaineer.

Mountaineer does not contest the ALJ's invocation of the 15-year presumption of total disability due to pneumoconiosis. Pet. Br. at 23. Instead, it contends that the ALJ erred in finding that the evidence established the existence of legal pneumoconiosis and, thus, erred in finding the presumption unrebutted. Pet. Br. at 12-24. Mountaineer's argument misconstrues the 15-year presumption rebuttal provisions and the ALJ's decision.

Following invocation of the 15-year presumption, it is employer's burden to

16

establish the absence of pneumoconiosis—both clinical and legal—or that the miner's disabling respiratory impairment is not due in part to coal mine employment. *Barber v. Director, OWCP*, 43 F.3d 899, 900 (4th Cir. 1995) ("The respondent may rebut this presumption by showing either (i) that the miner does not have pneumoconiosis at all or (ii) that pneumoconiosis does not contribute to the miner's disability."). Because it is the employer's burden to establish rebuttal, evidence that fails to affirmatively establish the presence of pneumoconiosis may nonetheless be legally insufficient to rebut the presumption. *See Rose v. Clinchfield Coal Co.*, 614 F.2d 936, 939 (4th Cir. 1980) ("[Claimant's] failure to demonstrate such a relationship [between the miner's lung disease and coal mine employment], however, does not bar her recovery; on the contrary, it is the [employer's] failure to effectively rule out such a relationship that is crucial here."). Thus, Moutaineer's contention that the medical evidence did not establish legal pneumoconiosis is irrelevant. Rather, as shown below, the ALJ reasonably found that Mountaineer failed to rebut the presumption (JA 71), and that was all that was necessary to issue the award.

**3.   The ALJ permissibly found the opinions of Drs. Zaldivar and Crisalli insufficient to rebut the 15-year presumption because they were inconsistent with the regulatory definition of pneumoconiosis and relied on medical evidence not admitted into the record.**

The ALJ reasonably determined that neither Dr. Zaldivar nor Dr. Crisalli provided a reliable or persuasive basis on which to rebut the presumption of total

disability due to pneumoconiosis.  The ALJ reached this conclusion because their

opinions were inconsistent with the regulatory definition of pneumoconiosis and

were based on medical evidence not admitted into the record.  JA 69-70.  This

determination is supported by substantial evidence and should be affirmed.

*Harman Mining Co. v. Director, OWCP*, 678 F.3d 305, 310 (4th Cir. 2012) ("As in

all agency cases, we must be careful not to substitute our judgment for that of the

ALJ….As long as substantial evidence supports an ALJ's findings, '[w]e must

sustain the ALJ's decision, even if we disagree with it.'") (citations omitted).

Mountaineer complains that the ALJ erred in characterizing Drs. Zaldivar

and Crisalli's opinions as contrary to the regulatory definition of pneumoconiosis.

Pet. Br. at 13.  But Dr. Zaldivar opined that "pneumoconiosis does not cause a

restrictive pulmonary impairment" (JA 143) and Dr. Crisalli stated that "the

absence of the obstructive defect…rules out coal dust related lung disease." JA

179.  These pronouncements are clearly inconsistent with the regulatory definition

of "pneumoconiosis," which includes "chronic restrictive…pulmonary

impairments."  20 C.F.R. § 718.201(a)(2).  The ALJ thus properly discredited these

opinions for that reason.  *Harman Mining*, 678 F.3d at 311 (citing "robust body" of

Fourth Circuit law holding that "an ALJ should not credit expert opinions of

doctors who rely on facts or premises that conflict with the Act"); *see also*

*Consolidation Coal Co. v. Director, OWCP*, 521 F.3d 723, 726 (7th Cir. 2008)

18

(doctor's opinion that coal dust exposure rarely causes obstructive impairment is inconsistent with preamble to black lung regulations).

Although Mountaineer believes its doctors' opinions are consistent with the regulations, it has not demonstrated why the ALJ's interpretation of them is plainly wrong. Addressing this very situation where an expert's report can be variously interpreted, the Seventh Circuit explained that "[w]e agree with [the coal company] that it is possible to understand [its expert's] statement in a different way, namely, simply as support for his conclusion that it was [the miner's] smoking history, and not pneumoconiosis, that was causing his obstructive impairment. Nevertheless, on substantial evidence review we would have to find that the latter interpretation was the only permissible one, not that it was one of several. In that light, the ALJ's inference of hostility to the Act was permissible." *Midland Coal Co. v. Director, OWCP*, 358 F.3d 486, 492 (7th Cir. 2004). Consequently, the ALJ's determination that neither Dr. Zaldivar nor Dr. Crisalli provided a credible opinion sufficient to rebut the presumption that Dingess's disabling restrictive respiratory impairment is due in part to coal dust exposure is supported by substantial evidence.[6]

---

[6] Drs. Zaldivar and Crisalli's opinions are unusual in that experts retained by the coal industry historically have opined that coal dust exposure does not cause an obstructive disease or impairment. *See e.g.*, 65 Fed. Reg. 79938-44 (Dec. 20,

(continued…)

Even if the ALJ wrongly believed that Drs. Zalidvar and Crisalli's opinions were contrary to the regulatory definition of pneumoconiosis, any such error was harmless because the ALJ provided an additional, valid reason for finding them insufficient to rebut the presumption. *Harman Mining*, 678 F.3d at 313 (*citing Island Creek Coal Co. v. Compton*, 211 F.3d 203, 213 n.13 (4th Cir. 2000) ("declining to reach the employer's other arguments that the ALJ erred in discrediting doctors" opinions "'in light of [the reviewing court's] conclusion that there was a sufficient factual basis to support one reason for discrediting each opinion'")). The ALJ reasonably faulted Dr. Zaldivar and Dr. Crisalli's opinions for considering an extensive amount of evidence (blood gas tests, x-rays, CT scans, and treatment records) that had not been admitted into the record.[7] JA 70.

Mountaineer disagrees with this finding, alleging that the evidence would have been admissible *if introduced*. Pet. Br. at 18-19. But to argue the

_____

(…continued)

2000); *Harman Mining*, 678 F.3d at 311. Ironically, Dr. Zaldivar incorrectly bases his view that pneumoconiosis does not cause a *restrictive* impairment on a CDC discussion concerning the impact of coal dust exposure on *obstructive* impairments. *Compare* JA 143 with National Institute for Occupational Safety and Health, *Criteria for a Recommended Standard: Occupational Exposure to Respirable Coal Mine Dust* § 4.2.2. *Studies of COPD in Miners*, pps. 51-57 (1995) (found at http://www.cdc.gov/niosh/docs/95-106/).

[7] Between the two doctors, the ALJ identified at least twenty separate pieces of evidence that they considered but Mountaineer failed to introduce and have admitted into the record. JA 60 n.6, 62 n.7.

admissibility of evidence not even introduced is obviously speculation. More to the point, however, Mountaineer fails to recognize that the failure to have this evidence admitted left the ALJ in a state of uncertainty regarding the validity of its experts' opinions. Without the underlying records to review, the ALJ could not determine what documentation Mountaineer's doctors relied on, the extent to which they relied on the unadmitted documentation, and whether that documentation supported their opinions. JA 70. "'[A]s trier of fact, the ALJ is not bound to accept the opinion or theory of any medical expert.' The ALJ must examine the reasoning employed in a medical opinion in light of the objective material supporting that opinion, and also must take into account any contrary test results or diagnoses." *Compton*, 211 F.3d at 211 (citations omitted); *see also Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 710 (6th Cir. 2002) (explaining that the absence of dates or results of any tests "to support [the doctor's] views precludes the ALJ from relying upon [the doctor's] opinions"); *Freeman United Coal Mining Co. v. Cooper*, 965 F.2d 443, 449 (7th Cir. 1992) (affirming ALJ's decision to give no weight to treating doctor who asserted the miner had pneumoconiosis but did not identify the documentation he relied upon). Thus, Mountaineer's apparent evidentiary lapse prevented the ALJ from determining whether its experts' opinions were reasoned and documented, and the ALJ therefore acted within his discretion in concluding that the lack of clear

21

documentation undermined those opinions.[8]

In sum, Mountaineer has failed to demonstrate that the ALJ made any mistakes in his evaluation of the credibility of Drs. Zaldivar and Dr. Crisalli's opinions. The ALJ permissibly found this evidence—Mountaineer's only affirmative evidence—insufficient to rebut the presumption that Dingess's totally disabling respiratory impairment is due to pneumoconiosis. The award of benefits is therefore supported by substantial evidence and should be affirmed.[9]

---

[8] Mountaineer's argument that the ALJ improperly relied on the Board's decision in *Keener v. Peerless Eagle Coal Co.*, 23 Black Lung Rep. (Juris) 1-229, 2007 WL 1644032 (2007) (en banc) is misguided. Although *Keener* in relevant part addressed the credibility of a doctor's opinion based on evidence that had been improperly admitted (rather than on evidence that had not been introduced or admitted at all), 23 Black Lung Rep. at 1-241-242, it is proper to discredit or accord less weight to a medical opinion in either case.

[9] Mountaineer's complaints (Pet. Br. at 16-17, 21) about the ALJ's consideration of Drs. Ranavaya and Gaziano's opinions are irrelevant. Both opined that coal dust exposure contributed to the miner's total respiratory impairment and thus support, rather than rebut, the presumption of total disability due to pneumoconiosis.

## CONCLUSION

For the foregoing reasons, the Director respectfully requests that the Court affirm the ALJ's award of benefits to Larry Dingess.

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

RAE ELLEN JAMES
Associate Solicitor

GARY K. STEARMAN
Counsel for Appellate Litigation


/s/ Helen H. Cox
HELEN H. COX
Attorney
U.S. Department of Labor
Office of the Solicitor
Suite N-2119
200 Constitution Avenue, N.W.
Washington, D.C.  20210
(202) 693-5660
BLLS-SOL@dol.gov
Cox.helen@dol.gov

Attorneys for the Director, Office
of Workers' Compensation Programs

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that

this brief is proportionally spaced, using Times New Roman 14-point typeface, and

contains 4,394 words, as counted by Microsoft Office Word 2010.

/s/ Helen H. Cox
HELEN H. COX
Attorney
U.S. Department of Labor
BLLS-SOL@dol.gov
Cox.helen@dol.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2013, copies of the Director's brief were served electronically using the Court's CM/ECF system and by mail, postage prepaid, on the Court and the following:

Mark J. Grigoraci, Esq.
Robinson & McElwee
P.O. Box 1791
Charleston, WV  25326
mjg@ramlaw.com


Otis R. Mann, Jr., Esq.
Law Offices of Otis R. Mann, Jr.
215 Hale Street
Charleston, WV  25301
Watkins.jennifer75@yahoo.com


/s/ Helen H. Cox
HELEN H. COX
Attorney
U.S. Department of Labor
BLLS-SOL@dol.gov
Cox.helen@dol.gov